UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Jorge Gonzalez | Jill Williams | |

**Proceedings:**    PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT (Filed December 18, 2015, Dkt. 77)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Filed December 18, 2015, Dkt. 74)

## I. INTRODUCTION

On August 25, 2014, the Court granted a motion to consolidate three cases: R.S., et al. v. City of Santa Ana, et al. ("the R.S. Case"), Tiffany Nunley v. City of Santa Ana, et al. ("the Nunley Case"), and Travis Mock v. City of Santa Ana, et al. ("the Mock Case"). R.S. Dkt. 30; Nunley Dkt. 34; Mock Dkt. 27. These cases all arise from the non-fatal shooting of Travis Mock by Santa Ana Police Officer Peter Picone, and the fatal shooting of Jason Hallstrom by Santa Ana Police Officer John Rodriguez. These shootings occurred in Santa Ana, California on the afternoon of March 15, 2013. The plaintiffs in these cases now bring civil rights actions under federal and state law against defendants. As relevant here, all of the plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment.

On December 18, 2015, plaintiffs filed a joint motion for partial summary judgment in all three of the consolidated cases. R.S. Dkt. 117; Nunley Dkt. 69; Mock Dkt. 77. On January 11, 2016, the defendants in all of the consolidated cases filed a joint opposition. R.S. Dkt. 130; Nunley Dkt. 77; Mock Dkt. 83. On January 25, 2016, the plaintiffs filed a reply. R.S. Dkt. 140; Nunley Dkt. 81; Mock Dkt. 86.[1] In addition, the

---

[1] On February 4, 2016, the parties in the R.S. Case and the parties in the Nunley Case filed a notice of settlement with the Court. Accordingly, the Court DENIES AS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

defendants in the Mock Case filed a motion for summary judgment in that case on December 18, 2015. Dkt. 74. Plaintiff Mock filed a notice of non-opposition to this motion on January 11, 2016. Dkt. 82. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

On March 15, 2013, Peter Picone ("Picone"), an officer with the Santa Ana Police Department ("SAPD") was driving a police vehicle in downtown Santa Ana. Plaintiffs' Statement of Undisputed Facts ("PSUF") ¶¶ 1, 4; Defendants Statements' of Undisputed Facts ("DSUF") ¶¶ 1, 4. John Rodriguez ("Rodriguez"), another officer with the SAPD, and Picone's partner, was riding in the passenger seat of the police vehicle. PSUF ¶ 4; DSUF ¶ 4. On the same day, plaintiff Travis Mock ("Mock") was driving a vehicle in downtown Santa Ana. PSUF ¶ 5; DSUF ¶ 5. Jason Hallstrom ("Hallstrom" or "decedent") was riding in the passenger seat of Mock's vehicle. Id.

On the on-ramp to the Interstate-5 North freeway, Mock and Hallstrom drove past officers Picone and Rodriguez. See PSUF ¶ 6; DSUF ¶ 6. The officers noticed that Mock's vehicle had a broken taillight and attempted to initiate a traffic stop. Id.[2] Officer Rodriguez activated the police vehicle's emergency lights and followed Mock's vehicle onto the freeway. Defendant's Additional Material Facts ("DAMF") ¶ 166. However, Mock did not stop his vehicle and a pursuit ensued. PSUF ¶ 7; DSUF ¶ 7. Mock drove his vehicle onto the freeway onramp. DAMF ¶ 167. When he reached vehicles that were stopped at the traffic control signal, Mock drove his vehicle onto the shoulder, passed the stopped vehicles, and continued onto the freeway. Id. When Mock reached the end of the onramp, traffic on the freeway was gridlocked and Mock continued to drive along the right shoulder. DAMF ¶ 170. After driving less than a mile, Mock exited the freeway

---

MOOT the plaintiffs' motions for summary judgment in those two cases.

[2] Defendants assert that officers Picone and Rodriguez attempted to initiate a traffic stop on Mock's vehicle for two reasons: (1) the vehicle had a right taillight that was out; and (2) Mock made a last-minute signal before turning onto the freeway ramp. DSUF ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

and the pursuit continued on surface streets for approximately a quarter mile. PSUF ¶ 13; DSUF ¶ 13.

At that time, Mock attempted to make a right turn, but instead crashed onto the sidewalk curb. See PSUF ¶¶ 14-16; DSUF ¶¶ 14-16. Mock's vehicle came to a stop partially raised onto the sidewalk curb. PSUF ¶ 16; DSUF ¶ 16. Shortly thereafter, Officer Picone brought his vehicle to a stop behind Mock's vehicle. PSUF ¶ 21; DSUF ¶ 21. Mock and Hallstrom both opened the doors of Mock's vehicle at about the time it came to a stop. PSUF ¶ 19; DSUF ¶ 19. The parties version of the events in this case diverges at this point.

According to plaintiffs: Mock and Hallstrom exited the vehicle and began running away from Picone and Rodriguez. PSUF ¶ 24. As they ran away from the officers, Mock and Hallstrom's hands and arms formed a running motion and their hands were clearly visible. PSUF ¶ 51. At no point during their flight did either Mock or Hallstrom turn around to face the officers; rather, Mock and Hallstrom continued running away from the officers. PSUF ¶¶ 68-69, 107.

Officer Rodriguez observed Hallstrom exit Mock's vehicle. PSUF ¶ 32. As Hallstrom ran away from the vehicle, Officer Rodriguez could see both of Hallstrom's hands and Officer Rodriguez could see that Hallstrom's hands were clear of any objects. PSUF ¶¶ 38, 39. Officer Rodriguez could also see that there was no gun, or anything that looked like a gun, sticking out of Hallstrom's waist band or pocket, nor could Officer Rodriguez see any bulges or shapes in Hallstrom's clothing that might have indicated the presence of a weapon. PSUF ¶¶ 41-42. Officer Rodriguez drew his weapon and aimed it at Hallstrom's center mass area, i.e. his chest. PSUF ¶¶ 47, 57. Officer Rodriguez then opened fire on Hallstrom and fired roughly four to five shots at Hallstrom. PSUF ¶¶ 60, 64. At the time Officer Rodriguez opened fire, Hallstrom was approximately fifteen feet away from him. PSUF ¶ 61.

Officer Picone observed Mock exit his vehicle. PSUF ¶ 99. As Mock ran away from the vehicle, Officer Picone could see Mock's hands and could see that there was no weapon in Mock's hands. PSUF ¶ 101. Picone could not see a gun on Mock's person or anything sticking out his waistband that could have been a gun. PSUF ¶ 105. Likewise, Picone did not see any bulges in Mock's clothing that could have been a weapon. PSUF ¶ 106. Roughly two to five seconds after Mock exited his vehicle, Officer Picone drew

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

his weapon and fired at Mock. PSUF ¶ 98. Officer Pircone fired three to four shots at Mock. PSUF ¶ 113. At the time Officer Picone shot Mock, Mock was approximately fifteen feet away from him. PSUF ¶ 114.

According to defendants: Mock crashed his vehicle in a residential area of Santa Ana. DAMF ¶ 187. After exiting the police vehicle, Officer Picone pursued Mock, and Officer Rodriguez pursued Hallstrom. DAMF ¶ 182. Both officers ordered Mock and Hallstrom to "stop" and "get on the ground," but Mock and Hallstrom continued to run away from the officers. DAMF ¶¶ 184, 197. Officer Rodriguez testified during his deposition that before he shot Hallstrom he observed him making a "furtive" movement with his hands and bring his right hand towards his waistband. DAMF ¶ 198. Similarly, Officer Picone testified that as Mock ran he looked over his left shoulder towards Officer Picone and that his right hand dipped towards his waistband. DAMF ¶ 185. The officers state that they believed that Mock and Hallstrom might be reaching for weapons. DAMF ¶¶ 186, 199. Shortly after observing these motions, the officers fired several shots at Mock and Hallstrom. DAMF ¶¶ 189, 201.

The parties agree that at least one of Officer Picone's shots hit Mock and that at least two of Officer Rodriguez's shots hit Hallstrom. PSUF ¶¶ 82, 84, 118; DSUF ¶¶ 82, 84, 118. After this incident, Mock and Hallstrom were arrested and taken to a hospital. DAMF ¶¶ 193, 209. Several days thereafter, Hallstrom died of his gunshot wounds. PSUF ¶ 81; DSUF ¶ 81.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

"conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

      In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV.**     **ANALYSIS**

    **A.**     **Plaintiff's Excessive Force Claim**

      Plaintiffs move for summary judgment on their excessive force claims. Plaintiffs argue that the uncontroverted facts in this case demonstrate that, at the time they were shot, Mock and Hallstrom posed no immediate threat of harm to officers Picone and Rodriguez and, in fact, were attempting to run away from the officers. Under these circumstances, plaintiffs contend that any rational jury must conclude that Picone and Rodriguez's shooting of Mock and Hallstrom was objectively unreasonable and excessive. The Court disagrees.

      The Fourth Amendment prohibits the police from using force that is not "reasonable under the circumstances." Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994); Saucier v. Katz, 533 U.S. 194, 201-02 (2001) ("[U]se of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."). The test of reasonableness is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

"Factors relevant to assessing whether an officer's use of force was objectively reasonable include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Gonzalez v. City of Anaheim, 747 F.3d 789 (9th Cir. 2014) (en banc) (citing Graham, 490 U.S. at 396 (1989)). Ultimately, the "most important" factor is whether the suspect posed an immediate threat to the safety of the officers or others. Mattos v. Agarano, 611 F.3d 433, 441 (9th Cir. 2011). Finally, the Ninth Circuit has cautioned that these factors are not exclusive and courts should "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case." Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).

"[W]hether a particular use of force was reasonable is rarely determinable as a matter of law." Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994). This is so because excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). Accordingly, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id.

Here, the parties dispute several material facts, which precludes the Court from granting summary judgment in favor of the plaintiffs on their excessive force claims. First, plaintiffs argue that as Mock and Hallstrom ran away from the officers their hands and arms formed a running motion and the officers could clearly see that Mock and Hallstrom were not carrying any weapons. Plaintiffs contend that this demonstrates that, from an objective standpoint, Mock and Hallstrom posed no threat of harm to the officers. However, these facts are disputed. Officer Rodriguez testified during his deposition that he observed Hallstrom make a "furtive" movement and move his right hand towards his waistband. Similarly, Officer Picone testified that he observed Mock look over his left shoulder towards Picone and then dip his right hand towards his waistband. A reasonable jury could find that Mock and Hallstrom's movements, reaching their right hands towards their waistbands, was consistent with reaching for a weapon. Contrary to plaintiff's argument, this set of facts would indicate that Mock and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

Hallstrom *did* pose a threat to Officers Rodriguez and Picone. And since the potential threat of harm is one of the most important factors in assessing the reasonableness of an officers use of force, this is a significant factual dispute. See Gonzalez, 747 F.3d at 793 ("The immediacy of the threat posed by the suspect is the most important factor.").

      Plaintiffs argue that even assuming Mock and Hallstrom moved their hands towards their waistbands, such a movement is consistent with normal running movements. Thus, plaintiffs argue that it would be unreasonable for a jury to infer that Mock and Hallstrom were reaching for a weapon, when a more rational explanation is that they were simply moving their hands as they ran. However, what plaintiff's are describing is a factual dispute. At trial, a jury will hear testimony regarding Mock and Hallstrom's movements as they ran away from the officers. The jury will then determine whether a reasonable officer would have perceived Mock and Hallstrom's movements as normal running movements, or whether they would have believed that the men were reaching for weapons. Moreover, the fact that weapons were not ultimately found on Mock and Hallstrom's person does not change this analysis. The Supreme Court has admonished courts that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. 386, 396; see also id at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). Accordingly, there is a significant factual dispute regarding whether a reasonable officer would have perceived an immediate threat of danger from Mock and Hallstrom's movements as they ran away from Officers Picone and Rodriguez.

      Second, the parties dispute whether Officer Rodriguez warned Hallstrom before he opened fire. Plaintiffs contend that Officer Rodriguez opened fire on Hallstrom without issuing any commands or warnings. However, defendants note that an eyewitness, George Montes, testified during his deposition that Officer Rodriguez commanded Hallstrom to "stop" and "get on the ground." DAMF ¶ 197.[3] The issuance of a warning may be relevant in assessing the reasonableness of an officer's use of force. See Gonzalez, 747 F.3d at 794 ("In general, we have recognized that an officer must give a

---

[3] Plaintiffs appear to concede that Officer Picone instructed Mock to "stop" several times before he opened fire. DAMF ¶ 184.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

warning before using deadly force 'whenever practicable.' ") (citing Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir. 1997)).

Finally, the highway pursuit, which initiated this incident, raises a number of factual questions and inferences that bear upon the reasonableness of the officers' use of force. In their motion, plaintiffs attempt to focus the Court's inquiry solely on the period of time between when Mock and Hallstrom exited Mock's vehicle and the time when the officers' opened fire. However, Courts are instructed to "examine the totality of the circumstances" when evaluating the reasonableness of an officers use of force. Bryan, 630 F.3d at 826.

Here, by the time Officers Rodriguez and Picone opened fire, Mock and Hallstrom had already failed to respond to an attempted traffic stop by a marked police vehicle. Mock then led the officers on a highway pursuit during which Mock drove his vehicle onto the highway shoulder, potentially placing other drivers at risk. The pursuit eventually came to an end after Mock made an unsuccessful right turn and his vehicle came to a stop partially raised on a sidewalk curb. Mock and Hallstrom then exited the vehicle, and continued to flee from the officers on foot. A reasonable jury, viewing the entire course of these events, could find that when Officers Rodriguez and Picone opened fire they were faced with an escalating situation that had begun with a simple traffic stop and intensified to a highway pursuit. In re Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 593 (7th Cir. 1997) (noting that officer's increased use of force was "an objectively reasonable response to the escalating situation they faced" where the evidence showed that the victim was responsible for the escalation). A reasonable jury could also find that Mock and Hallstrom had demonstrated a willingness to resist arrest, potentially through unsafe means, and with little regard to the safety of other drivers. See Graham, 409 U.S. at 397 (noting that, in excessive force cases, courts should consider "whether the suspect poses an immediate threat to the safety of the officers *or others*, and whether he is actively resisting arrest or attempting to evade arrest by flight.") (emphasis added)

Plaintiffs attempt to minimize the import of the highway pursuit. They contend that the pursuit spanned little more than a mile and lasted only a few minutes. Plaintiffs' argue that such a short pursuit could not possibly justify the use of lethal force. A jury may ultimately agree with plaintiffs. However, on a motion for summary judgment, the Court must draw all inferences in favor of the non-moving party—in this case, defendants. And, as already stated, an inference could be drawn from the highway

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

pursuit that Mock and Hallstrom posed a threat of harm to the officers and the public. Moreover, the strength of the inference that can be drawn from the highway pursuit will itself depend on the resolution of several factual disputes, such as the speed Mock was driving and the position of Mock's vehicle relative to other vehicles on the highway.

Accordingly, the Court finds that there a genuine disputes of material facts regarding plaintiffs' excessive force claims and therefore DENIES plaintiffs' motion for summary judgment on these claims.[4]

### B. Qualified Immunity

Next, plaintiffs move for summary judgment that neither Rodriguez or Picone is entitled to qualified immunity regarding plaintiffs' Fourth Amendment excessive force claims. "Qualified immunity protects officers from liability for civil damages where their alleged unconstitutional conduct does not violate a clearly established right." Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013).

Generally, courts follow a two-step inquiry in determining whether a government official is entitled to qualified immunity. Saucier, 533 U.S. at 201. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. Here, the Court finds that, given the factual disputes outlined above, it is premature to determine whether qualified immunity applies to this case. In particular, until the material factual disputes in this case are resolved, the Court cannot determine whether the officers conduct violated a clearly established law.

---

[4] Plaintiffs also move for summary judgment on their state law claims for battery, negligence, and for violations of the Bane Act. Plaintiffs argue that, to the extent Officers Picone and Rodriguez used excessive force in violation of section 1983, they should also be liable under these state law claims. However, for the reasons stated above, the Court finds that there are genuine disputes of material fact, which precludes the Court from ruling, as a matter of law, that Officers Picone and Rodriguez used excessive force. Accordingly, the Court DENIES plaintiffs motion for summary judgment on their state law claims as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

     Under the Supreme Court's two-step inquiry, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. In their motion, plaintiffs assert that, as of March 2013, the law was clearly established that a reasonable police officer could not "shoot in the back, without warning, a fleeing, unarmed subject who was not suspected of committing a serious crime, and did not pose an immediate threat to the officers or the public." Mot., at 16. However, even assuming that plaintiffs are correct, and the law is clearly established in the manner plaintiffs describe, it is not clear that the scenario plaintiffs describe aligns with the facts of this case.

     Rather, as outlined above, there are a number of material factual disputes that still must be resolved, such as whether the officers issued a warning before firing their weapons, and whether Mock and Hallstrom appeared to be reaching for weapons as they ran from the officers. After these disputes are resolved the officers may be entitled to qualified immunity, or they may not be. But it would be premature to make that determination now. See also Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."); Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); Chien Van Bui v. City & Cnty. of San Francisco, 61 F. Supp. 3d 877, 898-99 (N.D. Cal. 2014) ("This is not to say that the officers may not be entitled to qualified immunity after the disputed material facts are resolved. But for now, the court denies Defendants' motion insofar as it asks the court conclude that the officers are entitled to qualified immunity.").

     Accordingly, the Court DENIES plaintiffs' motion for summary judgment with respect to the issue of qualified immunity.

**V.    MOCK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     The defendants in the Mock case have also filed a motion for summary judgment. In their motion these defendants only move to dismiss Mock's first claim for excessive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

force in violation of section 1983, and only to the extent it attempts to hold the City of Santa Ana liable. Mock has filed a notice of non-opposition to this motion. Dkt. 82.

To recover damages under section 1983 against a municipality involved in a constitutional violation, a plaintiff must prove a constitutional injury resulting from a "policy, practice, or custom of the local entity." Avalos v. Baca, 517 F.Supp.2d 1156, 1166 (C.D. Cal. 2007) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff may not hold a municipality liable solely on a theory of respondeat superior. AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) ("Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability.").

Here, in his first claim, Mock attempts to hold the City of Santa Ana liable for the conduct of Picone under a theory of respondeat superior liability. However, under the cited case law, this is not a viable theory of liability. Moreover, Mock's failure to file an opposition to this motion may be deemed consent to the granting of the motion. See C.D. Cal. L.R. 7-12 (the failure to file an opposition may be deemed consent to the granting of the motion).

Accordingly, the Court GRANTS defendants' motion for summary judgment. Mock's claim for excessive force against the City of Santa Ana is, hereby, dismissed.[4]

---

[4] Mock has also asserted a separate claim against the City of Santa Ana entitled "section 1983; Monell claim." In this claim, he alleges that the City of Santa Ana "maintained policies, procedures, customs, or practices" that permitted or authorized Picone and Rodriguez to use excessive force. Defendants initially filed a motion for summary judgement as to this claim as well. Dkt. 74. However pursuant to a stipulation filed by the parties on Friday, January 8, 2016, the parties have agreed to stay proceedings on that portion of defendants' motion for summary judgment pending the resolution of outstanding discovery issues. Dkt. 80. In addition, defendants have not sought summary judgment on plaintiffs' remaining state law claims for assault, battery, and negligence. Accordingly, all of these claims remain pending.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 8:14-cv-00778-CAS(FFMx) | Date | February 8, 2016 |
|---|---|---|---|
| Title | TRAVIS MOCK V. CITY OF SANTA ANA, ET AL. | | |

## VI. CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiffs' joint motion for summary judgment.[5] The Court **GRANTS** the Mock defendants' motion for summary judgment on Mock's first claim for excessive force against the City of Santa Ana.

IT IS SO ORDERED.

| | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

[5] Plaintiffs also moved for summary judgment on the question of whether plaintiffs R.S. and H.H. had standing to bring claims as the successors in interest to decedent, Jason Hallstrom. However, subsequent to filing their motion for summary judgment, R.S. and H.H. settled their claims with defendants. Accordingly, the Court **DENIES AS MOOT** plaintiffs' motion for summary judgment regarding the question of R.S. and H.H.'s standing.